UNITED STATES of America, Plaintiff,

v.

AMRO REALTY CORP., Harry Moskowitz, and David Moskowitz, Defendants and Third–Party Plaintiffs,

v.

ATLANTIC MUTUAL INSURANCE COMPANY; Unigard Security Insurance Company; Lumbermens Mutual Casualty Company; Graphic Arts Mutual Insurance Company; Federal Insurance Company; First State Insurance Company and Home Insurance Company, Third–Party Defendants.

No. 87–CV–1418.

United States District Court,
N.D. New York.

Nov. 12, 1992.

Gary L. Sharpe, U.S. Atty., Syracuse, N.Y. (James C. Woods, Asst. U.S. Atty., of counsel), Environmental Enforcement Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Richard H. Boote, of counsel), for plaintiff U.S.

Janvey Berglas & Goldon, New York City, (Hiram D. Gordon, of counsel), for defendants and third-party plaintiffs.

Barry McTiernan & Moore, New York City (Michael P. Close, of counsel), for third-party defendant Atlantic Mut. Ins. Co.

Drinker Biddle & Reath, Washington, D.C. (James M. Sweet, of counsel), Thuillez Ford Conolly & Kelly, Albany, N.Y. (Donald P. Ford, Jr., of counsel), for third-party defendant Lumbermens Mut.

Siff Rosen & Parker, New York City for third-party defendant First State Ins. (Mark S. Landman, Stephen Jacobs, Steven G. Adams, of counsel), Twining Nemia Hill & Steflik, Binghamton, N.Y., for third-party defendant First State.

Damon & Morey, Buffalo (Andrew Feldman, James M. Kieffer), for third-party defendant Unigard Sec.

Mound Cotton & Wollan, New York City (Larry Greengrass, John Mezzacappa and

Jeffrey B. Gold, of counsel), for third-party defendant Home Ins.

James S. Rowen Associates, New York City (James S. Rowen, of counsel), for third-party defendant Graphic Arts Mut.

Rogers & Wells, New York City (David A. Schulz, Barry W. Rashkover, of counsel), for third-party defendant Federal Ins.

Williams Micale & Wells, Syracuse (Peter N. Wells, of counsel), Syracuse, N.Y., A. Mark Pellegrino, Albany, N.Y., for third-party defendant Federal Ins.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

This litigation arises from the discovery in 1981 of environmental contamination on a site in South Cairo, New York. During all of the relevant time periods, the site on which the alleged damage occurred was owned by defendant/third-party plaintiff Amro Realty Corporation ("Amro") and was leased to American Thermostat Corporation ("AT"). Defendants/third-party plaintiffs David and Harry Moskowitz were officers, directors, and part-owners of AT; Harry Moskowitz was also an officer, director, and shareholder of Amro. In November, 1985, an involuntary bankruptcy petition was filed against AT pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 (1982).

The United States commenced this suit in 1987 pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9604, 9607 (1988 & West Supp.1992), against David and Harry Moskowitz and Amro, seeking recovery of costs incurred in correcting the harm caused by the contamination. For ease of discussion, this suit will be referred to as the "federal action." This clarification is necessary because on February 2, 1988, this court ordered that

the suit be consolidated with *New York v. Amro Realty Corp., et al.*, No. 86–CV–1318, a case which will be referred to as the "State action." In the State action, commenced in this court in 1986, the State of New York seeks remediation against these same defendants pursuant to CERCLA for their alleged contamination of the South Cairo site. As will become apparent below, the distinction between the federal action and the State action is critical to a proper analysis of the motion before the court.

Presently before the court is a motion by certain third-party defendants for summary judgment pursuant to Fed.R.Civ.P. 56(b). The court heard oral argument on this motion on September 22, 1991, after which it granted defendants' motion in its entirety and announced that this memorandum, explaining the rationale behind its decision, would be forthcoming. This ruling, of course, does not affect the actions against the non-moving third-party defendants.

## I. BACKGROUND [1]

This federal action represents at least the third lawsuit arising out of the alleged contamination of the South Cairo site. In 1981, shortly after discovering the contamination, New York State commenced the first suit against Amro and AT in New York State Supreme Court pursuant to state statutory and common law. The State essentially alleged that Amro and AT had engaged in pollution from the 1950s through 1981 by improperly disposing of various hazardous substances into a drainage ditch, the groundwater, and the ground. Several residential neighbors of the site filed similar suits in state court against Amro and AT. In 1983, Amro and AT entered into an interim consent order with the State which obligated them to undertake various remedial measures. These remedial measures included supplying bottled or filtered water to households

---

**1.** The current motion presents the third occasion on which the court has considered the events giving rise to this extensive litigation. Rather than thoroughly recite the facts yet another time, the court refers the reader to the two previously published decisions in the State action. *See New York v. Amro Realty Corp.,* 745 F.Supp. 832 (N.D.N.Y.1990), *aff'd in part and rev'd in part,* 936 F.2d 1420 (2d Cir.1991); *New York v. Amro Realty Corp.,* 697 F.Supp. 99 (N.D.N.Y.1988). What follows is a brief statement of the facts that are necessary to support the ensuing discussion.

affected by the contamination and investigating the extent of the damage.

When AT entered bankruptcy in 1985, it discontinued compliance with the consent order. The State consequently commenced an action—the aforementioned State action—in this court in December, 1986 against David and Harry Moskowitz and Amro pursuant to CERCLA and state common law, alleging that the defendants were each liable as "owners" or "operators" within the meaning of CERCLA § 107, 42 U.S.C. § 9607. The State actually gave the Moskowitzes notice of its intent to bring suit against them on March 19, 1986, nine months before commencing the suit, by sending them a "Potentially Responsible Party" letter. On April 10, 1986, within one month of receiving the State's letter, the Moskowitzes informed one of their insurance carriers, third-party defendant Unigard Security Insurance Co. ("Unigard"), of the State's intent and requested that Unigard indemnify them and pay for their defense.[2] Unigard responded on May 30, 1986, by declining to provide coverage, asserting that the Moskowitzes's failure to report the contamination in a timely manner precluded them from receiving coverage.

In July, 1987, the Moskowitzes and Amro (collectively, the "insureds") filed a third-party complaint in the State action against Unigard, Lumbermens, Atlantic Mutual Insurance Co., Federal Insurance Co., Home Insurance Co., Zurich Insurance Co., and First State Insurance Co. Each of these third-party defendants is an insurance carrier that provided either the Moskowitzes or Amro (or both) with coverage during the times that the contamination allegedly occurred.[3] The third-party actions sought defense and indemnification as well as a declaration that the insureds are entitled to counsel of their choice. Relying upon the existence of "pollution existence clauses" contained in the respective policies, the court granted summary judgment to all of the carriers except Lumbermens and Zurich.[4] See generally Amro Realty Corp., 745 F.Supp. 832; Amro Realty Corp., 697 F.Supp. 99. Last year, the Court of Appeals for the Second Circuit affirmed the summary judgment based upon application of the pollution exclusion clauses. New York v. Amro Realty Corp., 936 F.2d 1420 (2d Cir.1991).

While the State action was pending, the United States commenced the current suit, the federal action, on October 30, 1987, against the insureds in this court. By the insureds' own admission, "[i]n several respects the United States complaint resembles the New York State complaint." Third–Party Pl. Mem. (9/4/92) at 10. Specifically, both are brought pursuant to CERCLA and seek recovery for the environmental contamination that allegedly occurred between the 1950s and 1981 on the site in South Cairo. On December 31, 1991, the insureds impleaded the same carriers that they impleaded in the State action, again seeking defense costs and

**2.** The Moskowitzes also requested coverage from Lumbermens Mutual Casualty Coverage ("Lumbermens"). As Lumbermens is not a participant in today's motion, its interaction with the Moskowitzes is not germane to this discussion.

**3.** More precisely, the third-party complaint seeks recovery against Unigard as the successor to Jamestown Mutual Insurance Co. and Unigard Jamestown Mutual Insurance Co., which allegedly provided coverage during the applicable periods.

**4.** Zurich was not entitled to summary judgment because it did not move for summary judgment. Lumbermens was not entitled to summary judgment under a pollution exclusion clause because its policies did not contain such a clause.

This court granted summary judgment to Lumbermens on other grounds, however, in a ruling that also applied to Unigard. Specifically, the court found that the insureds failed to give Lumbermens and Unigard timely notice of the occurrence of pollution as required by the respective policies, thereby precluding their entitlement to coverage. Amro Realty Corp., 697 F.Supp. at 106. The Second Circuit reversed that aspect of the court's decision, ruling that Lumbermens had waived its timeliness defense. Amro Realty Corp., 936 F.2d at 1433. The court affirmed summary judgment against Unigard, however, because the Unigard policy also contained a pollution exclusion clause which alternatively justified summary judgment. Id. at 1429.

indemnity.[5]

## II. DISCUSSION

Third-party defendants Atlantic Mutual, Unigard, Home, Federal, and First State (hereinafter collectively referred to as the "carriers") move for summary judgment on grounds that the pollution exclusion clauses contained in their policies preclude the insureds from recovering in this suit. The carriers submit that their current motion is the same as their summary judgment motion in the State action, in that the alleged contamination, the governing policies, the parties at issue, and the stated basis for relief are the same as those that the court considered in the State action. As in the State action, Unigard also moves for summary judgment on grounds that the insureds did not file a timely request for coverage. The carriers urge that, given the parallelism of issues between the two cases, the court should dispose of this case in the identical manner that it disposed of the third-party claims in the State action, *i.e.* by summary judgment pursuant to the pollution exclusion clauses.

### A. The State action

Since the carriers place such heavy reliance upon the rulings in the State action, the court necessarily begins this discussion with a brief review of those rulings. More particularly, this initial discussion is a necessary predicate to the analysis of the extent to which the State action rulings apply to this case.

As previewed above, the carriers moved for summary judgment in the State action based upon the presence of a pollution exclusion clause in the policies. Each of the policies' pollution exclusion clauses essentially provides, with little variation (and no substantive variation):

This policy shall not apply ... to any liability of any insured arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic materials, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water *unless such discharge, dispersal, release or escape is sudden and accidental.*

*See Amro Realty Corp.,* 936 F.2d at 1426 (emphasis added).

Under this clause, the carriers must provide coverage, *i.e.* indemnification and a defense, for liability arising from claims of environmental contamination only if the contamination was "sudden and accidental"; under any other circumstance, the carriers need provide no coverage at all. *Id.* at 1427.[6] The carriers argued that the alleged contamination at the South Cairo site was neither sudden nor accidental and therefore was not excepted from the pollution exclusion clause. The issue, therefore, was whether the "sudden and accidental" exception to the pollution exclusion clause applied so as to require the carriers to provide a defense and indemnity to the insureds.

■ As the Second Circuit explained, an insurance carrier's duty to defend and indemnify its insured in a lawsuit depends upon the allegations set forth in the underlying complaint, considered in light of the governing policy provisions. A carrier has a duty to defend its insured only when the pleadings allege an occurrence that is covered by the policy. *Amro Realty Corp.,* 936 F.2d at 1426 (citing *Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90 (Ct.App. 1991)); *see also, e.g., Avondale Indus., Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1204 (2d Cir.1989), *reh'g denied,* 894 F.2d 498 (2d Cir.), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). There-

---

5. The only difference in parties between the State and federal actions, aside from the plaintiffs, is that Zurich is a third-party defendant in the State action but not the federal action, and Graphic Arts Mutual Insurance Co. is a third-party defendant in the federal action but not the State action.

6. Throughout this memorandum, the court uses the term "contamination" to refer to the discharge, dispersal, release or escape of pollutants as set forth in the pollution exclusion clauses.

fore, to determine whether coverage from a lawsuit is required, the court "must examine the complaints in the underlying actions and decide whether there are ' "any allegations that arguably or potentially bring the action within the protection purchased" ' or a ' "reasonable possibility" ' that coverage exists." *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir.1990) (citations omitted). With respect to pollution exclusion clauses in particular, the Second Circuit affirmed this court's ruling that the exception (requiring coverage) applies only when the underlying complaint alleges contamination that was both sudden *and* accidental. "[I]f the discharge is either non-sudden or non-accidental, there will be no coverage." *Amro Realty Corp.*, 936 F.2d at 1427 (citing *Technicon Elecs. v. American Home Assurance Co.*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048, 1050 (Ct.App. 1989)); *New York v. Blank*, No. 88–CV–163, 1991 WL 208883, *3, 1991 U.S.Dist. LEXIS 14582 *9–12 (N.D.N.Y. Oct. 10, 1991) (citing *New York v. Blank*, 745 F.Supp. 841, 850 (N.D.N.Y.1990)).

With this standard as background, the Second Circuit reviewed the relevant allegations in the State's complaint to determine whether they set forth claims of sudden and accidental contamination. The relevant allegations were:

16. The American Thermostat Corporation used, *inter alia*, the chemical solvent tetrachloroethylene in its manufacturing operations to clean and remove grease from thermostat parts and components.

17. Upon information and belief, from the early 1950s and continuing until discovery by plaintiff in 1981, AT disposed of, *inter alia*, waste tetrachloroethylene in several places on the site, including: the parking lot, sinks which discharged in septic systems on the site, and drains which discharged through a sewage pipe into a drainage ditch on the west edge of the site.

26. Defendants know or should have known ... that the methods of disposal of these wastes resulted in their release into the environment, and that adequate measures had not been taken to prevent future releases and migration of the chemicals to offsite areas....

*Id.* From these claims the Court concluded that the State's allegations could not be reasonably construed as alleging sudden and accidental disposal of the contaminants. The Court was particularly swayed by the complaint's allegation that the disposal occurred over a period of thirty years and thus could not be deemed "sudden." *Id.* at 1428. With respect to the requirement that the pollution be accidental, the Court ruled that the only reasonable interpretation of the State's claim that AT "disposed" of its waste by methods which the defendants "knew or should have known" would result in contamination is that AT intentionally—not accidently—caused the contamination. *Amro Realty Corp.*, 936 F.2d at 1427–28.

The net result of the Court's analysis was that the State's complaint could not be interpreted as alleging sudden and accidental contamination. The insureds, therefore, could not rely upon the exception to the pollution exclusion clauses to seek indemnity. Moreover, as a consequence of the insured's inability to receive indemnity, the carriers were absolved from their obligation to provide the insureds with a defense to the State's suit. *See id.* at 1427. The Second Circuit therefore affirmed this court's grant of summary judgment to the carriers on the basis of the pollution exclusion clauses. *But see supra* n. 4 (ruling did not apply to Lumbermens because its policy did not contain a pollution exclusion clause).

### B. Effect of the State action

Given the Second Circuit's affirmance of this court's rulings in the State action, the carriers insist that summary judgment must be granted in this case, too. Their reasoning carries some initial appeal: since the federal action is asserted against the same parties and alleges the same contamination, the interpretation of the identical policy terms must be the same. Indeed, the federal action leads one to question how the policy could reasonably be inter-

preted as requiring coverage in one case when coverage has already been excluded for what appears to be the same alleged occurrence in a seemingly identical case.

■ The analysis, however, is not as simple as the carriers suggest. The court rejects the carriers' argument that the Second Circuit rulings in the State action have preclusive effect on the federal action. The doctrine of issue preclusion, also known as collateral estoppel, applies to bar a party from litigating only those issues that have been previously adjudicated. *E.g. ITT Corp. v. United States*, 963 F.2d 561, 563–64 (2d Cir.1992). For the doctrine to take effect, there must be an "identity of issue" between the prior action and the present action and the common issue must necessarily have been decided in the prior action. *Id.; accord, e.g., Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *Wilder v. Thomas*, 854 F.2d 605, 616 (2d Cir. 1988), *cert. denied sub nom., Wilder v. New York State Urban Dev. Corp.*, 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989) (citations omitted).

In this instance, there is no identity of issues between the State and federal actions. As discussed above, the determinative issue in each action is whether the *particular* complaint alleges contamination that is covered by the pollution exclusion clauses. *See* discussion *supra* p. 354; *Avondale Indus., Inc.*, 887 F.2d at 1204; *EAD Metallurgical, Inc.*, 905 F.2d at 11. Whether the State of New York's complaint in the State action alleges covered occurrences has no bearing on whether the United States's complaint in the federal action alleges covered occurrences. Furthermore, it is conceivable that the complaint in the State action does not allege sudden and accidental contamination—this court has already ruled that it does not— while the complaint in the federal action does allege sudden and accidental contamination. This court must make an independent inquiry in the federal action to determine whether *its* underlying complaint alleges contamination that is sudden and ac-

cidental and therefore covered by the respective policies. Since this federal action requires such an inquiry, the doctrine of issue preclusion simply does not apply.

■ On the other hand, a comparison of the federal complaint and the State complaint reveals astonishing similarities. The federal complaint sets forth the operative allegations in three paragraphs:

13. AT used, *inter alia,* the chemical solvent tetrachloroethylene in its manufacturing operations at the site to clean and remove grease from thermostat parts and components. Tetrachloroethylene is a "hazardous substance" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

14. Upon information and belief, from the mid-1950s through at least 1981, AT disposed of, *inter alia,* waste tetrachloroethylene in several locations at the site.

15. The disposal activities referred to in paragraph 14, above, resulted in the contamination of, *inter alia,* soil at the site and groundwater underneath and near the site.

*Compare* allegations in complaint of State action, *supra* p. 354. Significantly, all of the allegations relating to the cause of the contamination are presented in these three paragraphs; the complaint is silent as to any other cause of the contamination.

The most notable similarity between federal allegations and those set forth in the State complaint is the nearly identical allegation that AT disposed of tetrachloroethylene from the 1950s until at least 1981. This allegation actually carries two components: first, that AT "disposed of" hazardous waste, and second, that the disposal occurred during a course of more than twenty years. When considered together, these two components nearly mirror the factors upon which the Second Circuit relied in the State action to find that the alleged contamination was neither sudden nor accidental. With respect to the allegation that the contamination occurred over a period of more than twenty years, the Second Circuit relied upon this fact to rule that the complaint cannot reasonably be interpreted as alleging a "sudden" release.

*Amro Realty Corp.*, 936 F.2d at 1428. Indeed, New York courts have consistently held that "[f]or a release or discharge to be sudden, it must 'occur[ ] over a short period of time.'" *Technicon Elecs. Corp. v. American Home Assur. Co.*, 141 A.D.2d 124, 533 N.Y.S.2d 91, 99 (2d Dep't 1988), *aff'd*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (Ct.App.1989) (citation omitted); *accord Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir.1991). Since the contamination here is alleged to have occurred over a period exceeding two decades, one cannot seriously contend that the complaint alleges sudden contamination.

With respect to the allegation of "disposal," the Court reasoned that "'[d]isposing' connotes a deliberate and intentional activity" that would preclude a finding that the complaint alleged accidental contamination. *Amro Realty Corp.*, 936 F.2d at 1428 (citing *EAD Metallurgical, Inc.*, 905 F.2d at 11). To the extent that the underlying federal complaint alleges that the contamination was caused by the insureds' "disposal" of hazardous substances and attributes no other cause to the contamination, the court, guided by principles of *stare decisis*, must conclude that the complaint does not allege that the contamination was accidental.

The insureds unpersuasively insist that the federal complaint is distinguishable from the state complaint in three critical respects. First, they point out that the federal complaint, unlike the State complaint, does not allege that the disposal "*continued* over the period" from the 1950s through 1981. Instead, the federal complaint merely alleges that AT disposed of the waste "*from* the mid–1950s *through* at least 1981." The insureds argue that since the federal complaint failed to allege that the contamination "continued" during the thirty year time period, one could reasonably construe this allegation as possibly asserting contamination over a short period of time, *i.e.* sudden contamination. In sum, the insureds essentially take issue with the federal complaint's use of the words "from" and "through" instead of "continued."

The insureds' distinction is unreasonable. In fact, the Second Circuit refuted a similar argument in *EAD Metallurgical, Inc.*, 905 F.2d at 11. The circumstances giving rise to *EAD Metallurgical* were similar to those presented in the instant case: an insured who was sued for damages caused by environmental contamination sought coverage from its insurance carrier which, in turn, denied coverage based upon a pollution exclusion clause. The underlying complaint alleged that the defendant caused contamination "throughout its operation from March, 1977 through 1983 . . . ." *Id.* The Second Circuit viewed this allegation (along with one other allegation relating to intent) and concluded, "[r]eading these allegations in the light most favorable to appellants, there is no question that, unlike the defendants in *Avondale*, appellants are alleged to have "continuously and intentionally polluted." *Id.*

This court is unable to discern any material difference between the complaint in *EAD Metallurgical* and the complaint in the present case with respect to the allegations of contamination that might be covered by the pollution exclusion clauses. The complaint in *EAD Metallurgical* alleged that the contamination occurred "throughout [the insured's] operation," from 1977 through 1983. This sole distinction, in this court's view, is not sufficient to require a result that is completely opposite to that drawn by the Second Circuit. The Second Circuit's construction of the *EAD Metallurgical* complaint as alleging continuous contamination within the meaning of the pollution exclusion clause severely undercuts the insured's position that the United States's complaint, which carries nearly identical language, does not necessarily allege such continuous contamination.

■ Significantly, this court would draw the same conclusion even without the benefit of the Second Circuit's instruction in *EAD Metallurgical*. This result would be compelled by the established rule that the court may only attribute a reasonable interpretation to the complaint. *E.g. Ogden Corp.*, 924 F.2d at 42. By any common

meaning, an allegation that an event transpired from one time *through* another connotes that the event occurred for the duration of that time period: the operative words are "from" and, more importantly, "through." Webster's Dictionary defines "through" as meaning, *inter alia*, "during the entire period of," or "from the beginning to the end of". Webster's Ninth New Collegiate Dictionary 1230 (1991). By asserting that the contamination occurred "from" the 1950s *"through"* at least 1981, the United States has alleged continuity by its ordinary meaning, at least sufficient to defeat any claim that the disposal was sudden. If no reasonable trier of fact could find that "continued" contamination occurred suddenly, *see Amro Realty Corp.*, 936 F.2d at 1428, then neither could a reasonable trier of fact could find that contamination that occurred "from the 1950s through 1980" occurred suddenly. In sum, the distinction between the two complaints in this regard is in wording only; the substance of the allegations are the same.

The insureds' second and third distinctions are related in that they both concern the "accidental" component of the pollution exclusion clause. The insureds point out that the federal complaint, unlike the State complaint, does not state where or how AT disposed of the waste tetrachloroethylene. They further point out that the federal complaint, again unlike the State complaint, contains no allegation regarding the insureds' knowledge or intentions concerning the disposal of the waste tetrachloroethylene. Based upon these distinctions, the insureds contend that the federal complaint could "arguably or potentially" be interpreted as setting forth statements that allege accidental contamination, thereby creating the "reasonable possibility" that coverage exists. *Cf. EAD Metallurgical, Inc.*, 905 F.2d at 11. Therefore, argue the insureds, they are entitled to receive from the carriers a defense to the United States's suit.

█ Of course, the court need not even review this argument because it has already concluded that the contamination was not sudden. As stated above, *see su-*

*pra* p. 354, the exception to the pollution exclusion clause takes effect only when the contamination is sudden *and* accidental: the absence of either element precludes reliance upon the exception. *Amro Realty Corp.*, 936 F.2d at 1427. Once the court established that the complaint does not allege sudden contamination, the insureds were ineligible to receive indemnification or a defense. Still, since the insureds' arguments in this respect might carry some initial appeal, the court will discuss why they must nonetheless be dismissed.

Once again, the Second Circuit's decision in the State action provides the basis for concluding that the insureds have drawn distinctions that make no material difference. In that decision, the Court indicated that the failure to designate the location of contamination does not, by itself, allow one to infer that the complaint alleges accidental disposal. The Court specifically explained, "[t]hat certain of the defendants may not have known ... where the waste would end up, does not make the 'release into or upon land ... or any watercourse' any more 'accidental'." *Amro Realty Corp.*, 936 F.2d at 1428 (citing *Technicon*, 533 N.Y.S.2d at 95). With respect to the implications drawn from the absence in the federal complaint of a statement concerning the insureds' knowledge or intentions, one must return again to the complaint's allegation that the insureds "disposed of" the waste. According to the Second Circuit, "disposed of" is a term of intent, not mistake. *Id.* The complaint's use of "disposed of" instead of "spilled," for example, suggests that the contamination was allegedly caused by a conscious, deliberate act and was not accidental. In fact, the federal complaint may be even stronger in its allegation of willful contamination than the State complaint because it does not allege that the insureds "should have known" of the effects of their contamination. During the State proceeding, these same insureds unsuccessfully urged that the allegation "should have known" sounds in mere negligence (or accidental conduct), not willfulness. *See id.* By deleting from its complaint the allegation that the insureds "should have known" about their activities,

the United States arguably removed any doubt as to whether the insureds acted in any manner other than willfully. This deletion is especially conspicuous when one considers that the federal complaint unambiguously retained the allegation that the insureds "disposed of" the waste.

In sum, while the Second Circuit's rulings in the State action do not technically have a preclusive effect on the instant case, the similarity between the State and federal complaints renders those rulings directly applicable. The federal complaint cannot reasonably be construed as alleging that the insureds' disposal of waste was "sudden," nor can the complaint reasonably be construed as alleging that the disposal was accidental. Therefore, the insureds cannot rely upon the "sudden and accidental" exception to escape the hardship of the pollution exclusion clauses contained in the carriers' policies. The insureds are not entitled to coverage pursuant to these policies for any liability that may arise from the federal action. Therefore, the carriers' motion for summary judgment based upon the pollution exclusion clauses is granted.

### C. Timeliness of claim

Unigard alternatively moves for summary judgment on grounds that the insureds did not claim coverage in a timely manner as required by the governing policy. Since Unigard is among the carriers that is entitled to summary judgment due to the operation of the pollution exclusion clauses, the court need not address Unigard's more tenuous argument concerning the timeliness of the insureds' claim. *See Amro Realty Corp.*, 936 F.2d at 1429 (same approach taken by Second Circuit in State action).

### III. CONCLUSION

The motion by third-party defendants Atlantic Mutual Insurance Co., Unigard Security Insurance Co., Federal Insurance Co.,

7. Home Insurance is only entitled to partial summary judgment because, as per counsel's representation at oral argument, it issued at least one policy to the insureds that did not contain a pollution exclusion clause. Inasmuch as summary judgment is warranted solely due

and First State Insurance Co. for summary judgment of the third-party action is granted due to the application of the pollution exclusion clauses. Third-party defendant Home Insurance Co.'s motion for partial summary judgment is granted due to application of the pollution exclusion clause.[7] The third-party actions against Lumbermens Mutual Insurance Co. and Graphic Arts Mutual Insurance Co. are not affected by today's ruling and thus remain intact.

IT IS SO ORDERED.

to operation of the pollution exclusion clause, today's ruling obviously only applies to dismiss those claims against Home Insurance Co. that are subject to policies which carried a pollution exclusion clause.