The TOWN OF UNION, NEW YORK, Plaintiff,

v.

The TRAVELERS INDEMNITY COMPANY, Aetna Casualty and Surety Company, Standard Fire Insurance Company, Royal Insurance Company of America and Safeguard Insurance Company, Defendants.

No. 89–CV–573 (FJS).

United States District Court, N.D. New York.

Dec. 1, 1995.

Whiteman, Osterman & Hanna, Albany, NY (Jean F. Gerbini of counsel), for Plaintiff.

Morrison & Foerster, New York City (Charles L. Kerr of counsel), for Defendant The Travelers Indemnity Co.

MacKenzie Smith Lewis Michell & Hughes, Syracuse, (Stephen T. Helmer of counsel), for Defendants Aetna Casualty and Standard Fire Insurance Co.

O'Connor, O'Connor Law Firm, Albany, NY (Diane Mayberger of counsel), for Defendants Royal Insurance Co. and Safeguard Ins. Co.

## DECISION AND ORDER

SCULLIN, District Judge.

## INTRODUCTION

This case involves insurance coverage disputes arising from a lawsuit brought by the Environmental Protection Agency ("EPA") against the Village of Endicott ("Village") and the Town of Union ("Town") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). The underlying EPA action alleged contamination resulting from the presence of hazardous substances at the Wellfield Site ("Site") in Endicott, New York. The complaint alleges that the Village owned a portion of the Site at a time when hazardous substances were disposed of on that portion. It also alleges that both the Town and

the Village operated this portion of the Site at a time when hazardous substances were disposed of on it. The EPA action sought a declaratory judgment of liability for response costs to be incurred by the United States in connection with the pollution at the Wellfield Site. On January 10, 1989, a Consent Decree was filed with the Court whereby the Town and the Village agreed to finance and implement certain investigative and remedial action at the Wellfield Site.

Prior to the filing of the EPA complaint, the Town notified the defendants, its insurance carriers, of its potential liability in this matter and requested defense and indemnification pursuant to the terms of its insurance policies. Defendants subsequently disclaimed coverage, thereby denying the Town's requests, and this action ensued. Presently before the Court are defendants' motions for summary judgment, as well as plaintiff's motion for partial summary judgment.

Defendant Travelers Indemnity Company ("Travelers") bases its motion on the following grounds: (1) that coverage is precluded by the pollution exclusion contained in its policies; (2) that coverage is precluded because the Town failed to comply with state sanitary codes; and (3) that coverage is precluded because there was no "occurrence." Defendants Aetna Casualty and Surety Company and Standard Fire Insurance Company (hereinafter referred to collectively as "Aetna") base their motion on the grounds that: (1) coverage is precluded by the pollution exclusion; and (2) coverage is precluded because there was no "occurrence."

Defendants Royal Insurance Company and Safeguard Insurance Company (hereinafter referred to collectively as "Royal") also assert the pollution exclusion defense and the "occurrence" defense as the basis for their motion for summary judgment. Additionally, the Town has cross-moved for partial summary judgment seeking a declaration that the defendants, the Town's insurance carriers, have a duty to defend the Town in the underlying CERCLA action.

## FACTS

In 1957 the Village of Endicott began operating a landfill at the Wellfield Site, in Endicott, New York. The Site includes the Ranney Well (the "Well"), a municipal water supply which is a major source of water for the Village of Endicott Municipal Water System. Gerbini Aff.Ex.B. In March 1969, the Town of Union entered into a contract with the Village to co-operate the landfill. This agreement continued until March 1978 when the landfill was closed.

In 1981, the EPA discovered that groundwater being drawn from the Well contained vinyl chloride and other hazardous substances. In June 1984, the New York State Department of Environmental Conservation ("DEC") notified the Town and the Village that it had nominated the Wellfield Site for inclusion on the EPA's National Priorities List of hazardous waste disposal sites. Carruthers Aff.Ex. 16. In 1986, the EPA began a remedial investigation of the Site, under CERCLA, which concluded in July 1987 with a finding that the landfill was the probable source of the contamination of the Well.[1] Kerr Aff.Ex. 8 at 73–76. Thereafter, on October 14, 1988, the EPA brought an action against the Village of Endicott and the Town of Union seeking remediation of the Wellfield Site. Gerbini Aff.Ex. B.

The EPA complaint against the Village and the Town states that

The United States seeks injunctive relief to abate an imminent and substantial endangerment to public health or welfare or

---

1. Because the initial EPA remedial investigation did not conclusively establish that the Landfill was the source of the contamination, a supplemental investigation was initiated. This supplemental investigation was conducted by IBM, one of the main sources of the industrial waste that was dumped at the Landfill, and approved by both the Town and the Village. Kerr Aff.Ex. 40. The IBM investigation was completed in two phases, with the first phase ending in 1990, and the second phase concluding in 1992. The findings that resulted from the first phase of the IBM investigation concluded that "based upon the distribution of VOCs ("volatile organic chemicals") in ground water, it appears they are emanating from [the Landfill]." Id. Ex. 24 at 6–1. The second phase of the investigation conclusively determined that the Landfill was the source of the VOCs. Id. Ex. 13 at 7–2 to 7–4.

the environment and a declaratory judgment of liability for certain response costs to be incurred by the United States in connection with the Endicott Village Wellfield Site....

Gerbini Aff.Ex.B. The specific allegations in the complaint state, in pertinent part,

8. The Village of Endicott owned and operated a portion of the Wellfield Site at a time when hazardous substances were disposed of on that portion.

9. The Town of Union operated a portion of the Wellfield Site at a time when hazardous substances were disposed of on that portion.

10. Releases of hazardous substances ... have occurred at the Wellfield Site.

. . . . .

18. The President, through EPA, has determined that the releases of hazardous substances at the Wellfield Site, by contaminating, *inter alia,* the Ranney Well, may constitute an imminent and substantial endangerment to the public health or welfare of the environment....

Gerbini Aff.Ex. B.

Following the filing of the EPA action against the Town and Village, the Town notified all of the defendants of its potential responsibility for the contamination and requested that they each defend and indemnify it in the EPA action. The Town based its requests for defense and indemnification on the provisions contained in the insurance policies it had purchased from each of the defendants. While most of these policies contain similar provisions, they are not all identical, therefore the Court will briefly outline the pertinent parts of each defendant's policies.

### a. Traveler's Policies

The Town is seeking coverage from defendant Travelers under three separate comprehensive liability policies issued between December 6, 1973 and December 6, 1976. Kerr Aff. ¶ 15. These policies each state that:

The Travelers shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....

*Id.* Exs. A–C.

Additionally, each policy contains "pollution exclusion" clauses which state that coverage does not apply to:

bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant

(1) if such emission, discharge, seepage, release or escape is *either expected or intended* from the standpoint of any Insured or any person or organization for whose acts or omissions any Insured is liable, or

(2) resulting from or contributed to by any condition in violation of or non-compliance with any governmental rule, regulation or law applicable thereto.... [2]

Clark Aff.Exs. A & C (emphasis added).

### b. Aetna's Policies

The Town is seeking coverage under five policies which covered the time period between December 10, 1976 and January 1, 1984. Helmer Aff. ¶ 26. Aetna's policies also provide that Aetna has the right and duty to defend any "suit" against the Town seeking "damages" due to "property damage" regardless of whether the allegations in the suit are "groundless, false or fraudulent." Helmer Aff.Exs. 12 & 13.

As with the Travelers' policies, each of Aetna's policies also contained a pollution exclusion. The pollution exclusions included in Aetna's policies are phrased somewhat differently than those in the Travelers' policies, however. The Aetna exclusion states that coverage does not apply:

to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon

---

**2.** This is the exact language of the pollution exclusions contained in the 1973–74 policy and the 1975–76 policy. The pollution exclusion in the 1974–75 policy is substantively the same although the wording is slightly different. Clark Aff.Ex. B.

land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape *is sudden and accidental.*

Helmer Aff.Ex. 12 (emphasis added).

### c. Royal's Policies

The Town seeks coverage from Royal under four comprehensive general liability policies that were issued by Royal from January 1, 1982 through April 1, 1986.[3] Mayberger Aff.Ex. A, ¶ 40. Royal's policies provide that it has "the right and duty to defend any suit against" the Town, regardless of whether any of the allegations of the suit are "groundless, false or fraudulent." Reed Aff.Exs. A–D.

Each of Royal's policies also include a pollution exclusion clause that is almost identical to those contained in Aetna's policies. That is, the exclusions deny coverage to all personal injury or property damage claims that were caused by a discharge or release of pollutants or contaminants where said discharge was not "sudden and accidental." *Id.*

## DISCUSSION

### I. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence in the light most favorable to the non-movant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S.. 451, 456–58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). The burden of showing that no genuine issue of material fact exists rests on the moving party, and all inferences are to be drawn in favor of the non-movant. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

### II. Duty to Defend

It is well settled that an insurer's duty to defend is broader than its duty to indemnify. *Technicon Elec. Corp. v. American Home Assurance Co.,* 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048, 1050 (1989). Under New York law, whether an insurer has a duty to defend "rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased." *Avondale Indus., Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1204 (2d Cir.1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). The Second Circuit has stated that a duty to defend exists, "if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *New York v. AMRO Realty Corp.* ("*AMRO I*"), 936 F.2d 1420, 1426 (2d Cir. 1991) (citation omitted).

### III. Burden of Proof

■ Under New York law, in insurance coverage cases, the initial burden of proof is on the insured to show that a covered loss has occurred. *See, e.g., McCormick & Co., Inc. v. Empire Ins. Group,* 878 F.2d 27, 30 (2d Cir.1989). Once such a showing has been made, the burden shifts to the insurer to show that the loss claimed is expressly excluded from coverage under the terms of the policy. *Continental Casualty Co. v. Rapid–American Corp.,* 80 N.Y.2d 640, 654, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993). The insurer's burden is a heavy one, especially where it is seeking to avoid its duty to defend. *New York v. Blank,* 27 F.3d 783, 789 (2d Cir.1994).

■ In order to avoid its duty to defend based upon an exclusion, "the insurer must demonstrate that the allegations in the underlying complaint[ ] are 'solely and entirely' within specific and unambiguous exclusions from the policy's coverage." *Avondale,* 887 F.2d at 1205; *Village of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 116 (2d

---

**3.** These policies were actually issued by Safeguard Insurance Company, a subsidiary of Royal Insurance Company of America.

Cir.1995) (exclusion provision "clearly and unmistakably" excluded liability asserted in complaint). Under New York law, pollution exclusions have been held to be "unambiguously plain and operative," and, therefore, have been given full effect where applicable. *See, e.g., Technicon,* 74 N.Y.2d at 71, 544 N.Y.S.2d 531, 542 N.E.2d 1048.

Additionally, the Second Circuit has held that "where an exclusion allows for an exception, the insurer bears the burden of showing that the exception to that exclusion does not apply." *Blank,* 27 F.3d at 789. Therefore, in order to prevail on their motions, the defendants must show that the allegations contained in the underlying CERCLA complaint fall "solely and entirely" within the terms of the pollution exclusions, and that no exceptions to those exclusions apply.

**Pollution Exclusions**

■ It is undisputed that in order for a pollution exclusion to be enforceable against a claim for coverage, "the complaint with respect to which coverage is sought must allege a discharge, dispersal, release or escape of a toxic or hazardous waste which has actually resulted in pollution." *Id.* 74 N.Y.2d at 74, 544 N.Y.S.2d 531, 542 N.E.2d 1048. In the case at bar, it is clear that the underlying CERCLA complaint includes allegations that the Town and the Village are liable for pollution caused by the discharge of hazardous materials at the Wellfield Site. Therefore, the pollution exclusions are applicable, and coverage will be excluded unless any of the exceptions to the exclusions are operable.

Here, while the terms of the relevant pollution exclusions are all generally identical, the exceptions provided by defendant Travelers Indemnity are different from those provided by the other defendants. As discussed above, the pollution exclusions in the policies issued by Travelers state that coverage for any injuries resulting from the discharge of pollutants is excluded where the discharge "is either expected or intended from the standpoint of [the] Insured." Therefore, unless the discharge was both unexpected and unintended, the exclusion is applicable and coverage is barred.

The exclusions contained in the Aetna and Royal policies all contain the same general denials of coverage and the same relevant exceptions. Those policies state that coverage is excluded unless the pollution discharge was "sudden and accidental." Therefore, coverage is precluded unless the alleged discharge was both "sudden and accidental." *Technicon,* 74 N.Y.2d at 75, 544 N.Y.S.2d 531, 542 N.E.2d 1048 ("Since the exception is expressed in the conjunctive, both requirements must be met for the exception to become operative").

While there are some differences in the wording of the exceptions to the pollution exclusions in the case at bar, they both require the Court to examine the allegations regarding the nature of the alleged pollution discharge. In interpreting the "sudden and accidental" exception to these clauses, New York courts have determined that a discharge is "accidental" when it is unexpected and unintended. *Ogden Corp. v. Travelers Indem. Co.,* 924 F.2d 39, 42 (2d Cir.1991). Because both exceptions look to whether the discharge was intentional,[4] the Court will focus its initial attention on that element of the exceptions to the exclusions. If the allegations in the underlying complaint allege that the discharge was intentional, "the disqualifying exclusion clause[s] [are] operative and there is no coverage because the exception clause[s] lack[ ] [their] springboard." *Technicon,* 74 N.Y.2d at 75, 544 N.Y.S.2d 531, 542 N.E.2d 1048.

**Underlying CERCLA complaint**

As outlined above, the CERCLA complaint filed against the Town and the Village contains the following allegations:

8. The Village of Endicott owned and operated a portion of the Wellfield Site at a time when hazardous substances were disposed of on that portion.

9. The Town of Union operated a portion of the Wellfield Site at a time when hazardous substances were disposed of on that portion.

---

4. As stated above, the exceptions to the Travelers' pollution exclusions use the terms "expected" and "intended" rather than "sudden and accidental."

10. Releases of hazardous substances ... have occurred at the Wellfield Site.

.     .     .     .     .

18. The President, through EPA, has determined that the releases of hazardous substances at the Wellfield Site, by contaminating, *inter alia*, the Ranney Well, may constitute an imminent and substantial endangerment to the public health or welfare of the environment....

Gerbini Aff.Ex. B. In light of the above allegations, the question before the Court is whether the charge that "hazardous substance were disposed of" at the Wellfield Site is sufficient to constitute intentional activity.

In *New York v. AMRO Realty Corp.* *("AMRO I")*, 936 F.2d 1420 (2d Cir.1991), the Second Circuit addressed the question of whether the use of the term "disposed of" in an underlying EPA complaint was sufficient to constitute intentional activity. There, the complaint alleged that:

> from the early 1950's and continuing until discovery by plaintiff in 1981, A[merican] T[hermostat] *disposed of,* inter alia, waste tetrachloroethylene in several places on the site, including: the parking lot, sinks which discharged in septic systems on the site, and drains which discharged through a sewage pipe into a drainage ditch on the west edge of the site.

*AMRO I,* 936 F.2d at 1427 (emphasis added). In addressing whether such an allegation could "even potentially"[5] be deemed to describe an "accidental" discharge, the Court determined that the term " '[d]isposing' connotes a deliberate and intentional activity." *Id.,* at 1428. In light of that determination, the Court held that the release of hazardous substances, as alleged in the underlying com-

plaint, "[could not] be considered 'accidental'." *Id.* Therefore, the "sudden and accidental" exception to the pollution exclusion was not operative and coverage was denied.

Following the Second Circuit decision in *AMRO I,* Chief Judge McCurn had occasion to revisit the question of whether the term "disposed of" can be read to indicate an "accidental" discharge. In *U.S. v. Amro Realty Corp. ("AMRO II"),* 806 F.Supp. 349 (N.D.N.Y.1992) (McCurn, C.J.), *aff'd,* 999 F.2d 537 (2d Cir.1993), the underlying CERCLA complaint contained allegations that were similar to those in the case at bar. There, the complaint alleged that:

> 14. Upon information and belief, from the mid–1950s through at least 1981, AT *disposed of,* inter alia, waste tetrachloroethylene in several locations at the site.

> 15. The disposal activities referred to in paragraph 14, above, resulted in the contamination of, inter alia, soil at the site and groundwater underneath and near the site.

*Amro II,* 806 F.Supp. at 355 (emphasis added). In light of these allegations, Chief Judge McCurn ruled that the contamination was neither sudden nor accidental.

In analyzing whether the allegations in the underlying complaint could possibly be read to allege an "accidental" discharge, Chief Judge McCurn relied upon the Second Circuit's determination in *AMRO I* that " 'disposed of' is a term of intent, not mistake." *Id.,* at 357. In discussing the implications associated with the use of the term " 'disposed of,' he stated that "[t]he complaint's use of 'disposed of' instead of 'spilled,' for example, suggests that the contamination was allegedly caused by a conscious, deliberate act and was not accidental."[6] *Id.*

---

**5.** " 'If the complaint contains any facts or allegations which bring the claim *even potentially* within the protection purchased, the insurer is obligated to defend.' " *AMRO I,* 936 F.2d at 1427 (quoting, *Technicon Electronics v. American Home Assurance Co.,* 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989)).

**6.** In *N.Y. v. Blank,* 27 F.3d 783 (2d Cir.1994), the Second Circuit was again faced with the question of whether a pollution exclusion operated to relieve an insurer of its duty to defend in an underlying CERCLA action. There, the underlying complaint alleged that

> [m]aterial containing hazardous substances was accepted by [the defendant in the underlying action], transported to or generated at the site, and was disposed of and released at the facility while [the underlying defendant] owned and operated the facility.

*Id.* at 790.

The *Blank* court determined that these "allegations were different from those held by [the Second Circuit] to fall within the standard pollution exclusion clause." *Id.* at 791. More specifically, the *Blank* court found that these allegations were different from those in *AMRO I.* Therefore, the Second Circuit concluded that the exception to

■ In the case at bar, the underlying CERCLA complaint alleges that "hazardous substances were disposed of," at the Wellfield Site during the time the Town was operating the landfill. The complaint does not specifically allege who was responsible for actually "disposing of" the hazardous substances, or where and how they were "disposed of." Such omissions do not, however, cause the complaint to be interpreted as "arguably or potentially" setting forth claims that allege an "accidental" discharge.

In *Amro II*, Chief Judge McCurn addressed the fact that the underlying CERCLA complaint failed to specifically allege where or how the hazardous materials were allegedly "disposed of." Relying on the Second Circuit's decision in *AMRO I*, Chief Judge McCurn stated that "the failure to designate the location of contamination does not, by itself, allow one to infer that the complaint alleges accidental disposal." *Amro II*, 806 F.Supp. at 357.

■ Similarly, the New York Court of Appeals, in analyzing a pollution exclusion almost identical to those of defendants Aetna and Royal, has stated that "there is nothing in the language of the pollution exclusion clause to suggest that it is not applicable when liability is premised on the conduct of someone other than the insured." *Powers Chemco, Inc. v. Federal Insurance Co.*, 74 N.Y.2d 910, 911, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989). In *Powers Chemco*, the court held that the pollution exclusion barred coverage even though the contamination alleged in the complaint was the result of discharges by a previous owner of the property. Accordingly, the pollution exclusions in the present case are not rendered inoperable simply by the fact that the underlying CERCLA complaint does not specifically allege who actually discharged the hazardous waste.[7]

It is clear that the underlying CERCLA complaint alleges that hazardous substances were "deliberate[ly] and intentional[ly]"[8] discharged at the landfill during the time that it was operated by the Town. In light of the Court's determination that the complaint alleged an intentional discharge, that discharge cannot be considered to be "unintended" or "accidental" within the meaning of the relevant pollution exclusions. Therefore, defendants' motions for summary judgment are granted, as the plaintiff's claims for coverage under the relevant policies are precluded by the pollution exclusion clauses contained therein.[9]

Accordingly, it is hereby

the pollution exclusion applied and the insurer was not relieved of its duty to defend.

This Court is unable to reconcile the decisions in *AMRO I* and *Amro II* with the Second Circuit's decision in *Blank*. The Court, however, finds the *AMRO I* and *Amro II* decisions to be more on point in deciding the case at bar.

7. As discussed above, the pollution exclusions in the Travelers' policies are different from the one in *Powers* and those in the Aetna and Royal policies. The differences in the exclusions do not, however, have a material effect on whether the omission of a specifically responsible party in the underlying complaint renders the exclusions inoperable. While the Travelers' exclusions look to whether the alleged discharge was "either expected or intended from the standpoint of the Insured," the Court finds that, in this context, the naming of a specifically responsible party is not essential in order to allege intentional conduct. The Court must focus its inquiry on whether the Town *"expected or intended"* the discharge, not whether the contents of that discharge were *"expected or intended." See Independent Petrochemical Corporation v. Aetna Casualty and Surety Co.*, 781 F.Supp. 9, 17 (D.D.C.1991), *aff'd*, 995 F.2d 305 (D.C.Cir.1993) (Applying New York law, court's inquiry was "whether there had been a *knowing* discharge of toxic or hazardous wastes," rather than "a discharge of *known* toxic or hazardous wastes.")

Here, the Town operated this landfill for nine years and, according to the allegations in the CERCLA complaint, at some point during that time someone "disposed of" hazardous substances at the site. Clearly, one who operates a landfill does so with the expectation and intention that people and companies will "dispose of" refuse at that landfill. Where, as here, that refuse includes hazardous materials, the landfill operator cannot escape liability by simply arguing that it never "expected or intended" that *type* of discharge at its site.

8. The term "disposed of" implies "a deliberate and intentional activity." *AMRO I*, 936 F.2d at 1428.

9. "Since there is no duty to defend, there also is no corresponding duty to indemnify." *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir.1991).

ORDERED, that defendants' motions for summary judgment are granted in their entirety; and it is further

ORDERED, that plaintiff's motion for partial summary judgment is DENIED; and it is further

ORDERED, that this action is DISMISSED.

**IT IS SO ORDERED.**