**The VILLAGE OF ENDICOTT, NEW YORK, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, and The Aetna Casualty and Surety Company, Defendants.**

No. 89–CV–572 (FJS).

United States District Court, N.D. New York.

Dec. 1, 1995.

Whiteman, Osterman & Hanna, Albany, New York (Jean F. Gerbini, of counsel), for Plaintiff.

O'Melveny & Meyers, New York City (Paul R. Koepff, of counsel), for Defendant Insurance Company of N.A.

Mackenzie Smith Lewis Michell & Hughes, Syracuse, New York (Stephen T. Helmer, of counsel), for Defendant Aetna Casualty.

## INTRODUCTION

SCULLIN, District Judge.

This case involves insurance coverage disputes arising from a lawsuit brought by the Environmental Protection Agency ("EPA") against the Village of Endicott ("Village") and the Town of Union ("Town") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). *See U.S. v. Village of Endicott, N.Y. and Town of Union, N.Y.,* 88–CV–1067 (N.D.N.Y.). The underlying CERCLA action alleged contamination resulting from the presence of hazardous substances in a landfill at the Wellfield Site ("Site") in Endicott, New York. The complaint alleges that the Village owned a portion of the Site at a time when hazardous substances were disposed of on that portion. It also alleges that both the Town and the Village operated that portion of the Site at a time when hazardous substances were disposed of on it. The EPA action sought a declaratory judgment of liability for response costs to be incurred by the United States in connection with the pollution at the Wellfield Site. On January 10, 1989, a Consent Decree was filed with the Court whereby the Village and the Town agreed to finance and implement certain investigative and remedial action at the Wellfield Site.

Prior to the filing of the EPA complaint, the Village notified the defendants, the Village's insurance carriers, of its potential liability in this matter and requested defense and indemnification pursuant to the terms of its insurance policies. Defendants subsequently disclaimed coverage, thereby denying the Village's requests, and this action ensued. Presently before the Court are defendants' motions for summary judgment, as well as plaintiff's motion for partial summary judgment.

Defendant Aetna Casualty and Surety Company ("Aetna") seeks summary judgment on the grounds that, (1) no "occurrence" took place which would have triggered coverage; (2) plaintiff failed to provide timely notice of a covered "occurrence"; and (3) plaintiff's claim is barred by the "pollution exclusion" contained in its insurance policies. Defendant Insurance Company of North America ("INA") has moved for summary judgment on the grounds that, (1) plaintiff violated the requirements of its insurance policy by failing to give timely notice of an occurrence, and (2) plaintiff's claim is partially-barred by the "pollution exclusion" contained in some of its policies.

The Village, meanwhile, has cross-moved for partial summary judgment seeking declaratory relief. More specifically, plaintiff seeks (1) a declaration adjudging that the defendants have a duty to defend it in the underlying action and that they are obligated to reimburse the Village for all costs associated with such a defense; (2) a declaration that the defendants have breached their policy obligations to the Village; (3) a declaration that, as a result of that breach, the burden of proof shifts to the defendants to prove that they are not obligated to indemnify the Village; and (4) a declaration that the Village is entitled to counsel of its own choice in defending the CERCLA action.

## FACTS

In 1957 the Village of Endicott began operating a landfill at the Wellfield Site, in Endicott, New York. The Site includes the Ranney Well (the "Well"), a municipal water

supply which is a major source of water for the Village of Endicott Municipal Water System. Gerbini Aff.Ex. B. In March 1969, the Town of Union entered into a contract with the Village to co-operate the landfill. This agreement continued until March 1978, when the landfill was closed.

In 1981, the EPA discovered that ground-water being drawn from the Well contained vinyl chloride and other hazardous substances. Similarly, in 1982 the New York Department of Health ("DOH") notified the Village that water levels from the Well contained "volatile organic chemicals," including vinyl chloride, and recommended that it take certain steps to address these "potential problems." Carruthers Aff.Ex. 9. Throughout 1983 and 1984 the New York State Department of Environmental Conservation ("DEC") continued to monitor the Site and issue reports regarding the Village's progress in addressing the situation.

In June 1984, the DEC notified the Village that it had nominated the Wellfield Site for inclusion on the EPA's National Priorities List of hazardous waste disposal sites. *Id.* Ex. 16. This letter also suggested that the Village contact the DEC if it had any questions regarding its "responsibilities at this site." *Id.* In 1986, the EPA began a remedial investigation of the Site, under CERCLA, which concluded in July 1987 with a finding that the landfill was the probable source of the contamination of the Well. *Id.* Ex. 3 at 76.

Thereafter, in November 1987, the EPA made a request for information from the Village regarding the situation at the Site pursuant to CERCLA. Following the Village's responses to this request, the EPA issued a letter on February 1, 1988, which notified the Village that it might be a potentially responsible party ("PRP") under CERCLA for the contamination at the Wellfield Site. This letter also notified the Village that if it were found to be a PRP, it "may be held liable for monies expended by the federal government in responding to the release or threatened release of hazardous

substances...." Gerbini Aff.Ex. A. On March 10, 1988, the Village notified defendant INA of the contamination problem and requested that INA defend and indemnify the Village with respect to any potential liability. Carruthers Aff.Ex. 40. On March 11, 1988, the Village notified defendant Aetna of the contamination and requested that Aetna also defend and indemnify it in the CERCLA action. Helmer Aff.Ex. 5. Thereafter, on October 14, 1988, the EPA brought an action against the Village of Endicott and the Town of Union seeking remediation of the Wellfield Site. Gerbini Aff.Ex. B.

The EPA complaint against the Village and the Town asserts that the United States seeks injunctive and declaratory relief against the Town and Village in regard to the contamination of the Ranney Well. Gerbini Aff.Ex. B. The specific allegations in the complaint allege, in pertinent part, that

8. The Village of Endicott owned and operated a portion of the Wellfield Site at a time when hazardous substances were disposed of on that portion.

9. The Town of Union operated a portion of the Wellfield Site at a time when hazardous substances were disposed of on that portion.

10. Releases of hazardous substances ... have occurred at the Wellfield Site.

. . . . .

18. The President, through EPA, has determined that the releases of hazardous substances at the Wellfield Site, by contaminating, *inter alia*, the Ranney Well, may constitute an imminent and substantial endangerment to the public health or welfare of the environment....

Gerbini Aff.Ex. B.

## RELEVANT POLICIES

### Aetna Policies

The Village based its request for defense and indemnification from Aetna on the provisions included in seven insurance policies which it had purchased during the time that it owned and operated the Landfill.[1] Those

---

1. Aetna issued the following policies to the Village: 52 AL256585 CRA(Y) (6/1/73–6/1/74), 52

AL258848 CRA(Y) (6/1/74–6/1/75), 52 AL260595 (6/1/75–6/1/76), 52 AL801757 CMA(Y) (6/1/76–

policies provided that Aetna had the right and duty to defend any "suit" against the Village seeking "damages" due to "property damage" caused by an "occurrence," regardless of whether the allegations in the suit are "groundless, false or fraudulent." Gerbini Aff. at ¶ 30 and Exhibits referred to therein. The policies defined the term "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured." Helmer Aff.Ex. 14 (emphasis supplied).

In addition, each Aetna policy contained notice requirements which stated:

*Insured's Duties in the Event of Occurrence, Claim or Suit*

In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

Helmer Aff.Ex. 15.

Each of these policies also included a "pollution exclusion," which stated in pertinent part:

This insurance does not apply ... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of

water; but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental. . . .*

Helmer Aff.Ex. 13 (emphasis added).

**INA Policies**

The Village's action against defendant INA is based on eleven policies which had been purchased by the Village between 1962 and 1973.[2] Carruthers Aff. ¶ 33–34. The policies covering the years 1962–1965, provided that INA would "defend any suit against the insured" seeking "damages" on account of property damages, including the loss thereof, caused by an accident. Gerbini Aff. ¶ 18, and Exhibits referred to therein. The policies covering the years 1968–1973 provided that INA would defend any suit against the insured seeking damages on account of property damage caused by an "occurrence," even if any of the allegations of the suit are "groundless, false or fraudulent." *Id.* at ¶ 19 and Exhibits referred to therein.

Additionally, five of the INA policies contained the following provisions:

*Notice of Accident*

When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

*Notice of Claim or Suit*

If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

6/1/77), 52 SM395023 FCA(Y) (6/1/77–6/1/80), 52 SM93554 FCS (6/1/80–6/1/83), AND 52 SM835771 FCS (6/1/83–6/1/86). Helmer Aff. at ¶ 25.

**2.** The eleven policies in question are: CLP 72155 (6/1/62–6/1/63), CLP 72407 (6/1/63–6/1/64), CLP 78258 (6/1/64–6/1/65), CLP 78863, CLP 85305,

GAL 36886, GAL 37512 (6/1/68–6/1/69), GAL 84236 (6/1/69–6/1/70), GAL 86303 (6/1/70–6/1/71), GAL 87921 (6/1/71–6/1/72), AND GAL 119362 (6/1/72–6/1/73). The record does not include copies of CLP 78863, CLP 85305, or GAL 36886.

Carruthers Aff.Exs. 27–31. The other six INA policies contained similar notice provisions with the main difference being the use of the word "occurrence" instead of "accident." Carruthers Aff.Exs. 32–37. Also, three of the eleven INA policies contained a standard pollution exclusion, similar to that contained in the Aetna policies.[3]

## DISCUSSION

### I. Summary Judgment Standard

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence in the light most favorable to the non-movant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). The burden of showing that no genuine issue of material fact exists rests on the moving party, and all inferences are to be drawn in favor of the non-movant. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987).

### II. Duty to Defend

■ It is well settled that an insurer's duty to defend is broader than its duty to indemnify. *Technicon Elec. Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048, 1050 (1989). Under New York law, whether an insurer has a duty to defend "rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased." *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1204 (2d Cir.1989), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). The Second Circuit has stated that a duty to

defend exists, "if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *New York v. AMRO Realty Corp.* ("*AMRO I*"), 936 F.2d 1420, 1426 (2d Cir. 1991) (citation omitted).

### III. Aetna's Arguments

Aetna has advanced three separate arguments in support of its motion for summary judgment. Aetna's first argument is that it is entitled to summary judgment because no "occurrence" took place which would have triggered coverage under the terms of its policies. Second, Aetna argues that summary judgment is warranted because the Village failed to provide timely notice of the alleged covered "occurrence." And finally, Aetna argues that the pollution exclusion clauses that were contained in its policies operate to preclude coverage in this matter.

■ The Court is mindful that "compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987). However, the Court will address Aetna's pollution exclusion argument prior to addressing its "occurrence," arguments.

### a. Pollution Exclusion Clauses

■ Aetna claims that the pollution exclusion clauses contained in each of its policies bar coverage in this matter because the underlying CERCLA complaint does not allege any "sudden and accidental" discharges. The law is clear that the discharge must be both "sudden and accidental" in order for the "sudden and accidental" exception to the pollution exclusion to apply. *Technicon*, 74 N.Y.2d at 75, 544 N.Y.S.2d 531, 542 N.E.2d 1048. Therefore, in order to prevail on this

---

**3.** Policies GAL 86303 (p. 01234), GAL 87921 (p. 01333), and GAL 119362 (p. 01380) each contain a pollution exclusion clause that stated

This insurance does not apply to bodily injury, personal injury or property damage arising out of pollution or contamination
(a) caused by oil, or

(b) caused by the discharge or escape of any other pollutants or contaminants, unless such discharge or escape results from a sudden happening during the policy period, neither expected nor intended from the standpoint of the insured.
Carruthers Aff.Exs. 1–3.

argument, Aetna must establish that the alleged discharge was either not sudden or not accidental. *See New York v. Blank,* 27 F.3d 783, 789 (2d Cir.1994) (insurer has burden of showing that exception does not apply).

In *Town of Union v. Travelers Indemnity Corp., et al.,* 1995 WL 728380 (89–CV–573), the companion case to the case at bar, this Court addressed the question of whether a standard pollution exclusion operated to bar coverage in light of the allegations contained in the underlying CERCLA complaint filed in this matter.[4] There, the Court, relying primarily upon the Second Circuit's decision in *New York v. AMRO Realty Corp.* *("AMRO I"),* 936 F.2d 1420 (2d Cir.1991), held that the pollution exclusion barred the Town's claim for coverage because the underlying CERCLA complaint alleged an intentional discharge. In light of the holding in *Town of Union,* the Court finds that the pollution exclusion clauses contained in Aetna's policies serve to bar the Village's claims for coverage in this matter.[5] Accordingly, Aetna's motion for summary judgment is granted.[6]

## IV. INA'S Arguments

As stated above, an insurer has a duty to defend where "the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased." *Avondale,* 887 F.2d at 1204. The Village's INA policies provided that INA would "defend any suit against the insured" which sought damages on account of property damage. Gerbini Aff. ¶ 18. Clearly, the underlying CERCLA complaint constitutes an action seeking damages as a result of the property damage caused by the disposal of hazardous wastes at the Wellfield Site landfill. Therefore, INA has a duty to defend the Village in the underlying action unless the Court finds that the terms of the Village's INA policies preclude coverage in this matter.

INA has set forth two arguments in support of its motion for summary judgment. First, it argues that the Village is not entitled to coverage because it failed to comply with the "notice-of-occurrence" provision contained in its policies. And, second, INA argues that the pollution exclusion clauses that were contained in three of its policies serve to bar any claims for coverage made pursuant to those policies. As with the Aetna's arguments, the Court will first address INA's pollution exclusion argument before addressing the late notice of occurrence argument.

### a. Pollution Exclusion Clauses

As stated above, three of the INA policies in question contained "pollution exclusion" clauses which exempted from coverage any claims for bodily injury or property damage which were the result of a "discharge or escape" of pollutants. Pursuant to these clauses, coverage was exempted unless the discharge or escape was found to be "neither expected nor intended from the standpoint of the insured." Therefore, the Court's holding in *Town of Union* serves to deny all claims for coverage made pursuant to those INA policies that contained a pollution exclusion clause.[7] Accordingly, defendant INA's motion for partial summary judgment is granted as to its duty to defend and indemnify the Village under the following policies: GAL 86303 (6/1/70–6/1/71), GAL 87921 (6/1/71–6/1/72), and GAL 119362 (6/1/72–6/1/73).

Although the Court has found that INA is not obligated to defend or indemnify the Village under three of the eleven policies at issue, INA may still be obligated to defend

---

4. As stated above, both the Town of Union and the Village of Endicott were named as defendants in the underlying complaint. The EPA based its claims on the fact that the Town and the Village jointly operated the Wellfield Site landfill at a time when hazardous wastes were disposed of on that site.

5. The Court has reviewed the additional arguments set forth by the Village and finds them to be without merit.

6. The Court need not address the additional arguments set forth by Aetna.

7. The pollution exclusion clauses contained in the Travelers' insurance policies at issue in *Town of Union v. Travelers, et al.,* contains very similar language to the INA clauses.

under the remaining eight policies. It is well settled that an insurer's duty to defend is broader than its duty to indemnify. *Technicon*, 74 N.Y.2d at 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048. Consequently, "[t]o avoid the duty ... the insurer must demonstrate that the allegations in the underlying complaint[ ] are 'solely and entirely' within specific and unambiguous exclusions from the policy's coverage." *Avondale Industries Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1205 (2d Cir.1989). In the case at bar, INA cannot make such a demonstration because eight of the policies that it issued to the Village during the time period in question did not include pollution exclusion clauses. Accordingly, INA will still be obligated to defend the Village in the underlying action unless the Court finds that coverage is precluded due to the Village's late notice-of-occurrence.[8]

### b. Late Notice-of-Occurrence

From 1962 through 1973, INA issued eleven policies to the Village of Endicott, each containing either a "notice-of-accident" provision or a "notice-of-occurrence" provision. For purposes of this motion, INA concedes that the events which gave rise to the investigations at the Wellfield Site since 1982 constituted either "accidents" or "occurrences." INA Mem. in Opp. at 2.

■ It is well settled that "compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987). Failure to comply with such a condition by the insured results in an abrogation of the insurer's duty to indemnify and duty to defend. *New York v. Blank*, 27 F.3d 783, 794 (2d Cir.1994).

■ While the issue of whether an insured has given timely notice of an occurrence is generally a question of fact, New York courts have held that it may be determined as a matter of law when "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." *Id.*, at 795. INA argues that the Village violated the notice-of-occurrence provisions included in its policies because it was aware of the potential pollution problems at the Wellfield Site as early as 1982 and it has not provided a valid excuse for failing to notify them until 1988. INA Mem. at 5–11.

■ In order to evaluate a defense of late notice-of-occurrence, the Court must determine "whether the circumstances known to the insured at th[e] time [of the occurrence] would have suggested to a reasonable person the possibility of a claim." *Commercial Union*, 822 F.2d at 272. In making this assessment, New York courts have applied an objective test, looking to what the insured "reasonably could or should have concluded." *Utica Mutual Ins. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 122 (2d Cir.1984).

The record clearly reflects the fact that the Village was notified by the New York State Department of Health of the presence of vinyl chloride [9] in the Ranney Well in a December 28, 1982 letter. Carruthers Aff.Ex. 9. Over the next two years, the Village cooperated with the Department of Environmental Conservation in its investigation of the contamination at the Site. The DEC conducted a Level III investigation of the Site, which "is the most intensified study outlined in Department ground water contamination response guidelines." *Id.* Ex. 17 at Bates stamp p. 02215. This investigation culminated in the DEC's nomination of the Wellfield Site for inclusion on the EPA's National Priorities List of hazardous waste disposal sites in June 1984. Carruthers Aff. Ex. 16.

---

8. If INA is determined to have a duty to defend, it will be obligated to defend the entire underlying action, notwithstanding the fact that it may only be obligated ultimately to indemnify the Village under the eight policies not containing pollution exclusion clauses. *See Emons Indust., Inc. v. Liberty Mutual Fire Ins. Co.*, 481 F.Supp. 1022 (S.D.N.Y.1979) (insurer had duty to defend entire action even though policy covered only one of 19 years during which plaintiffs may have suffered injuries).

9. Vinyl chloride is a hazardous substance as defined in section 101(14) of CERCLA. Carruthers Aff.Ex. 2 at ¶ 7.

While additional correspondence occurred between the Village, the DEC and the EPA subsequent to the placement of the Site on the National Priorities List, the Village did not notify INA about the contamination problem at the Wellfield Site until March 10, 1988. The Village's letter to INA was sent only after it had received a February 1988 notification from the EPA that it was a "potentially responsible party" under CERCLA for the contamination at the Site. Carruthers Aff.Ex. 40.

■ After reviewing the lengthy history of correspondence between the Village, the Department of Environmental Conservation and the Environmental Protection Agency, it is evident that the Village should have notified INA of its potential responsibility for the contamination before March 10, 1988. As stated above, the test for determining whether timely notice was given is "whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Commercial Union*, 822 F.2d at 272. It is clear that a reasonable person would have been aware of the possibility of a claim resulting from this contamination at least as early as 1984 when the DEC nominated the Site for the EPA's National Priorities List. *See, e.g., Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 43 (2d Cir.1991) (letter from lessor informing lessee that its use of property had resulted in environmental problems sufficient to constitute notice of possible claim).

Because New York courts have consistently held that delays of less than ten months were unreasonable for purposes of giving notice,[10] the Court finds that the Village's lengthy delay in notifying INA of the contamination problem was unreasonable as a matter of law. The Village, while not disputing that it failed to give notice to INA prior to March 1988, argues that INA waived its right to assert its late notice-of-occurrence defense because it failed to "explicitly .... raise [that defense] in a disclaimer letter." Pl.Mem. at 8.

### c. Waiver of Rights

■ For purposes of insurance claims, waiver has been defined as "a voluntary and intentional relinquishment of a known right." *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1433 (2d Cir.1991). New York courts have established that "[a]n irrevocable waiver may be found where 'the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to "abandon or not to insist upon the particular defense afterward relied upon".…' " *Id.* at 1431 (quoting *Kiernan v. Dutchess County Mutual Ins. Co.*, 150 N.Y. 190, 195, 44 N.E. 698 (1896)). Accordingly, in order to establish that a defense has been waived by an insurer, there must be "evidence that the insurer intended to abandon that defense." *Commercial Union*, 822 F.2d at 274.

■ In determining what constitutes an intentional abandonment of a potential defense, the New York Court of Appeals has consistently held that where an insurer asserts a specific defense to coverage, it is deemed to have intended to waive all unasserted defenses. *See, e.g., General Accident Ins. Grp. v. Cirucci*, 46 N.Y.2d 862, 864, 414 N.Y.S.2d 512, 387 N.E.2d 223 (1979) ("since [a specific] ground was not raised in the letter of disclaimer, it may not be asserted now"). Based upon relevant New York law, the Second Circuit has held that "the act by an insurer of disclaiming on certain grounds but not others is deemed conclusive evidence of the insurer's intent to waive the unasserted grounds." *AMRO*, 936 F.2d at 1432.

■ In examining the correspondence between the Village and INA following the Village's March 10, 1988, letter requesting defense and indemnity, the Court finds that material questions of fact exist which preclude it from determining whether INA intended to abandon its defense of late notice of occurrence.

INA's initial response to the Village's letter was a March 23, 1988, letter in which INA specifically reserved all of its rights

---

10. *See Blank,* 27 F.3d at 796 (including a listing of several cases in which New York courts have

"found periods of delay of less than ten months to be unreasonable").

under the policies in question.[11] Carruthers Aff.Ex. 41. After further investigation and a meeting with Village officials on April 25, 1988, INA issued another letter on June 15, 1988, in which it specifically addressed certain potential grounds for disclaiming coverage. *Id.* Ex. 42. In that letter INA referred to the Village's acknowledgement at the April 25 meeting that it was aware of contamination problems at the Site as early as 1980. In light of this information, INA "reserve[d] the right to disclaim coverage for this loss due to late notice resulting from the Village's delay in reporting this *claim* after it first had actual knowledge of the contamination in 1980." *Id.* (emphasis added).

While it would seem from the context of the letter that this reservation was in regard to the fact that the Village had known about the possibility of an *"occurrence"* in 1980,[12] INA couched its reservation of rights in terms of the Village's "late notice ... in reporting this *claim.*" (emphasis added). As stated above, the relevant policies contained "notice-of-occurrence (accident)" and "notice-of-claim" provisions, both of which served as conditions precedent to coverage and which could, if violated, provide a potential defense for INA.

The terms of the "notice-of-occurrence (accident)" provisions required the Village to notify INA upon the happening of events which could ultimately lead to a claim or suit against it. Carruthers Aff.Exs. 27–37. The "notice-of-claim" provisions, on the other hand, required the Village to notify the insurer once a claim had actually been made against it. *Id.* In the case at bar, the facts clearly establish that the EPA had not filed any claim against the Village as of June 15, 1988, the date that INA reserved its rights based upon the Village's late notice-of-claim.[13] Based upon the circumstances surrounding the issuance of the June 15 letter,

and the fact that no "claim" had been made against the Village at that time, the Court is unable to determine if INA intended to relinquish its right to assert the defense of late "notice-of-occurrence."

In further support of its waiver argument, the Village claims that INA is precluded from asserting this defense because it failed to specifically assert it in its answer to the complaint in this action. Pl.Memo in Opp. at 10. While it is true that INA's answer does not specifically cite late notice-of-occurrence as an affirmative defense, the fifth affirmative defense does state that

> Upon information and belief, plaintiff failed to satisfy conditions precedent, including, *but not limited to,* the failure to furnish INA with prompt written notice of the underlying claim and action.

Carruthers Aff.Ex. 44 (emphasis added). Although INA specified late notice-of-claim as an example of the Village's failure to satisfy conditions precedent, it was careful to provide that that was not the only condition precedent that it may assert as a potential defense. INA's articulation of the affirmative defense of failure to satisfy conditions precedent, again, raises a question as to whether it intended to waive its right to use late notice-of-occurrence as a defense to the Village's claim for coverage. *See Lugo v. AIG Life Ins. Co.,* 852 F.Supp. 187, 192 (S.D.N.Y.1994) (by reserving right to assert other defenses, insurer did not intend to abandon any unasserted defenses).

Accordingly, the Court finds that questions of material fact exist which preclude it from determining whether defendant INA waived its right to assert the defense of late notice-of-occurrence. Therefore, summary judgment is not proper.

---

**11.** The letter stated that INA "hereby reserve[s] any and all rights [it] may have pursuant to the terms and conditions of these policies." Carruthers Aff.Ex. 41.

**12.** The Court is unable to determine whether INA included a definition of the term "occurrence" in its policies. However, the record reflects that the term "occurrence" is generally defined as "an accident, including continuous or

repeated exposure to conditions, which results in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." Helmer Aff.Ex. 14.

**13.** The EPA filed the CERCLA action against the Village and the Town on October 14, 1988. Gerbini Aff.Ex. B.

## CONCLUSION

In light of the above analysis, the Court finds that defendant Aetna Casualty and Surety Company has no duty to defend or indemnify the Village of Endicott in the underlying CERCLA action. The Court also finds that defendant Insurance Company of North America has no duty to defend or indemnify the Village pursuant to the terms of policies GAL 86303 (6/1/70–6/1/71), GAL 87921 (6/1/71–6/1/72), and GAL 119362 (6/1/72–6/1/73). Additionally, the Court finds that defendant INA has a duty to defend the Village in the underlying action pursuant to the terms of the following policies: CLP 72155 (6/1/62–6/1/63), CLP 72407 (6/1/63–6/1/64), CLP 78258 (6/1/64–6/1/65), CLP 78863, CLP 85305, GAL 36886, GAL 37512 (6/1/68–6/1/69), GAL 84236 (6/1/69–6/1/70).

Accordingly, it is hereby

ORDERED, that the motion for summary judgment of defendant Aetna Casualty and Surety Company is GRANTED and this action is DISMISSED as to that defendant; and it is further

ORDERED, that the motion for summary judgment of defendant Insurance Company of North America based upon late notice of occurrence is DENIED; and it is further

ORDERED, that the motion for partial summary judgment of defendant Insurance Company of North America based upon the pollution exclusion clauses is GRANTED; and it is further

ORDERED, that the motion for partial summary judgment of the Village of Endicott, as to defendant Insurance Company of North America's duty to defend is GRANTED in part; and it is further

ORDERED, that defendant Insurance Company of North America is obligated to defend the Village in *U.S. v. Village of Endicott, N.Y. and Town of Union, N.Y.*, 88–CV–1067 (N.D.N.Y.); and it is further

ORDERED, that defendant Insurance Company of North America is obligated to reimburse the Village of Endicott for the costs the Village has incurred and will incur hereafter in defending the underlying CERCLA action; and it is further

ORDERED, that the Village is entitled to counsel of its own choice in defending the underlying CERCLA action; and it is further

ORDERED, that the Village's remaining requests for declaratory relief are DENIED.

**IT IS SO ORDERED.**